```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

CALVIN ALPHONSE LEE,            :
     Plaintiff,                 :
                                :
                                :
vs.                             :         CIVIL ACTION 12-478-CG-M
                                :
SAM COCHRAN, et al.,            :
     Defendant.                 :
                                :
```

REPORT AND RECOMMENDATION

Plaintiff, a Mobile County Metro Jail ("Metro Jail") inmate proceeding *pro se*, filed this § 1983 action in which he is seeking leave to proceed *in forma pauperis*.[1] This action has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate action.  Accordingly, it is recommended that Plaintiff's action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless

---

[1] Shortly after filing this action, Plaintiff was released from the Metro Jail.

> the prisoner is under imminent danger of serious physical injury.

28 U.S.C. 1915(g).  This section of the Prison Litigation Reform Act is known as the "three-strike rule."  *Jones v. Bock*, 549 U.S. 199, 224 (2007).  Under this rule, once a prisoner has three actions dismissed for one of the reasons stated above, "he is not entitled to proceed *in forma pauperis* . . . unless he can demonstrate that he meets the 'imminent danger' requirement of § 1915(g)."  *Pointer v. Marc*, 2011 WL 847012, at *1 (S.D. Ohio Mar. 8, 2011).  "The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless to pay the full filing fee when his next action is filed."  *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002).

After reviewing the records of the United States District Courts for the Southern, Middle, and Northern Districts of Alabama, the Court discovered that Plaintiff has had at least three actions or appeals that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted, namely, *Calvin Alphonse Lee v. Judge James Wood, et al.*, 1:04-CV-710-BH-B (S.D. Ala. Aug. 30, 2007) (dismissed as frivolous); *Calvin Alphonse Lee v. Sheriff Jack S. Tillman, et al.*, 1:04-CV-

823-WS-M (S.D. Ala. Sept. 22, 2006) (dismissed as frivolous); *Lee v. Warden Billy Owens, et al.*, 6:99-CV-3282-WMA-PWG (N.D. Ala. March 13, 2000) (dismissed for failure to state a claim upon which relief can be granted). Thus, the present action falls within the scope of § 1915(g).[2]

In order to avoid the dismissal of the present action under § 1915(g), Plaintiff must satisfy its exception, which requires that he show that he was "under imminent danger of serious physical injury" at the time of the complaint's filing. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001)("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three-strikes' rule to prevent impending harms, not those harms that had already occurred"); *Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004)("[a] prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); *Medberry v.*

---

[2] Plaintiff indicated in his Complaint that he has filed other lawsuits in state or federal court. Even though he was required to list all the actions, he listed only one (Doc. 1 at 2), and then he signs his Complaint under penalty of perjury (*Id.* at 11). The failure to list prior cases is considered sanctionable conduct warranting the dismissal of an action for an abuse of judicial process and the counting of the dismissal as a strike. *Hill v. Bishop*, 2012 WL 1698382, at *2-*3 (S.D. Ala. Apr. 12, 2012) (reviewing prisoner cases that were dismissed as a sanction for the plaintiff's failure to list his prior cases).

*Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999)(the imminent danger of serious physical injury faced must be at the time the complaint is filed, not at a prior time).

In order to decide if Plaintiff satisfies the exception, the Court will undertake a review of the Complaint to determine the filing date and to ascertain if the allegations satisfy the exception.  In a prisoner action, a complaint is filed when a "prisoner deliver[s] it to the prisoner authorities for forwarding to the [court clerk]."  *Houston v. Lack*, 487 U.S. 266, 273 (1988).  To determine the filing date in this action, the Court reviewed several of Plaintiff's filings.  Plaintiff signed his Complaint on July 16, 2012.  (Doc. 1 at 7).  Then, the institutional official completed the certificate portion of the Motion for Leave to Proceed Without Prepayment of Fees on July 23, 2012.  (Doc. 2 at 5).  The envelope containing Plaintiff's Complaint was post-marked July 25, 2012.  (Doc. 1 at 11).  Interestingly, Plaintiff's end-of-sentence date was given as July 26, 2012.  (*Id*. at 6).  Thus, the Court finds that the filing of Plaintiff's Complaint occurred at some point between July 23, 2012, when the certificate was signed by an institutional official (Doc. 2 at 5), and July 25, 2012, the date when postal officials received his Complaint.  (Doc. 1).

FACTS AND PROCEEDINGS

The Court's examination of Plaintiff's allegations is focused on the date of the Complaint's filing. The Court liberally construes Plaintiff's allegations and accepts as true the facts contained in Plaintiff's Complaint. *Brown v. Johnson*, 387 F.3d at 1350 (citations omitted). However, many of Plaintiff's claims are pled in a conclusory manner and a conclusion cannot be taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Plaintiff alleges that he was arrested again on June 23, 2012, for failure to pay restitution on two criminal cases for which he had completed serving his sentences (Doc. 1 at 7), and was subsequently taken to the Metro Jail. (*Id.* at 4). While Plaintiff was at the Metro Jail, he claims that Defendants "fail[ed] to render adequate medical treatment as required [and the Sheriff was] negl[igent] in the supervision of the jail[.]" (*Id.* at 5). Plaintiff contends that the harm, which has not been identified, caused by this treatment is "uncorrectable [sic}," and was "done out of malice and total disregard." (*Id.* at 8). Plaintiff's request for relief is to "[r]evive the method by which inmates receive medical care at MCMJ, pay any medical bills that may result in the future as to the harm [initiated] by present neglect, be allowed to see other-side medical personnel for

5

treatment, [and] pay punitive damages for suffering." (*Id.* at 7).

Prior to entering the Metro Jail, Plaintiff had been diagnosed with the following: "sleep apnea, hypretension [sic], anemic [sic], asmatha [sic], high cholestrol [sic], anyerisum [sic] on the A-ator [sic], dry eye syndrome, severe allergies and sinus problems, prostrate [sic] and bladder problems- visible, sciatica, vertebre [sic] problems- L-2, L-3, L-4, [and] chronic foot fungus infection.  And not leastly, a 56 [year] old male- black, on crutches, reporting reason being total [left] knee replacement, and awaiting release in order to have the right knee replaced." (*Id.* at 9).  When Plaintiff arrived at the Metro Jail, he was taking thirty-six medications on a daily basis. (*Id.*).  However, his "medical documents" concerning his medications were "discard[ed], and the seriousness of [his] requests to see a medical physician immediately" were ignored. (*Id.* at 8).  Plaintiff alleges that he "repeatedly tried to correspond with medical personnel as to [his] immediate needs for [his] medications," but his "documents were never retrieved and [his] issues overlooked for 23 days." (*Id.*).  He alleges that he is "in constant pain and [is] so uncomfortable," but he hasn't been prescribed a pain pill. (*Id.*).

Plaintiff contends that he "had to collasp [sic] in order to see the doctor, after repeatedly request[ing] a breathing treatment [due to his] asmatha [sic]." (*Id.*). He alleges that "being confined indoors 6 days [per week], without fresh air" makes him "constantly congested in the head and chest area, requiring [his] lungs to work harder than normal to supply [his] body with air, which causes [him] to panic and sleep sitting-up all night at times." (*Id.*). Plaintiff admits that he saw a doctor after he had difficulty breathing. (*Id.* at 10).

Plaintiff also takes issue with the cleanliness of Metro Jail. He complains that the administration does not clean the visitation area and that inmates using the visitation booths must use them "one behind the other" with no sanitation available in between. (*Id.* at 9). The phones for inmates "aren't cleaned, nothing is available." (*Id.* at 10). On July 18th, he claims to have "picked up a virus or something," and, as a result, "cannot speak." (*Id.*).

Plaintiff complains that his cell in the medical wedge is "dirty [and] unclean," and that its walls are infested with germs. (*Id.* at 10). The toilet in his cell leaks which has caused him to slip and fall twice. (*Id.*). He made a sick call request on July 17th, but has not seen a

7

doctor as of July 24th.  (*Id.* at 10).  He also complains that the cells in the medical wedge are overcrowded as there are "3-4 inmates in a cell designed to hold 2 inmates;" this caused "another inmate to be assaulted" because he could not defend himself due to his "restricted physical limitations."  (*Id.*).  And, as a result of the overcrowding, he is sleeping on the floor.  (*Id.*).

Plaintiff further alleges that "the jail security staff and medical staff conspire to deprive inmates of future medical treatment and to have other inmates beat up inmates that file reports on them." (*Id.* at 9).  He alleges that he will be retaliated against for his "whistle-blowing."  (*Id.*).  Lastly, Plaintiff complains that he is "now being held in isolated confinement such as you house a Death Row inmate."  (*Id.* at 10).

Shortly after receiving Plaintiff's Complaint, the Court received a letter from Plaintiff on July 30, 2012, advising the Court of his release from the Metro Jail and of his new address.  (Doc. 4 at 1).  Its envelope was postmarked July 28, 2012 (*Id.* at 2), which appears to be consistent with Plaintiff's end-of-sentence date that he provided the Court, July 26, 2012.  (Doc. 1 at 6).  Subsequently, Plaintiff provided the Court with another

address and mentioned that he received a total right knee replacement from the VA in Biloxi.  (Doc. 7).

## DISCUSSION

After a careful review of Plaintiff's allegations, the Court finds that his allegations, as a whole, fail to show that the conditions at the Metro Jail and/or medical treatment provided posed an "imminent danger of serious physical injury."  *Brown v. Johnson*, 387 F.3d 1344, 1350.  His allegations lack the specificity, which would lead the Court to conclude that, at the time of filing, the conditions complained of and/or lack of medical treatment would result in a serious physical injury to Plaintiff.  Instead, Plaintiff merely stated that a jail condition or a medical condition existed, without much further elaboration.  When Plaintiff did elaborate, his allegations did not state a serious physical injury that he would imminently suffer at the time the Complaint was filed.  It appears that Plaintiff was in an isolation cell when he filed the Complaint and, therefore, absent from the complained-of conditions while in his shared cell, and further, he had been seen by a doctor for his asthma.

To succeed, "[t]he plaintiff must allege and provide specific factual allegations of ongoing serious physical injury or a pattern of misconduct evidencing the likelihood

9

of imminent serious physical injury, and vague allegations of harm and unspecific references to injury are insufficient." *Ball v. Allen*, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007)(citation and quotation marks omitted)(unpublished).

Considering Plaintiff's many complaints, the most significant complaint that presented itself in the allegations during Plaintiff's short incarceration was his alleged asthma attack; though Plaintiff admits that, as a result of the attack, he saw a doctor.  However, Plaintiff has not described the attack in any detail, except to say that he collapsed and that he had unsuccessfully requested breathing treatments.  He neither specifies the reason that he requested breathing treatments from medical personnel, nor when this asthma attack occurred.  (Doc. 1 at 10). Although the asthma attack allegation is near a reference of July 24th, it is not expressly connected to that date. (*Id.*).  And, due to the fact that he admits he was seen by a doctor, Plaintiff's allegations for the nondescript attack do not convey that he was in imminent danger.

"In order to fit within the 'imminent danger' exception, [Plaintiff] must make specific allegations of present imminent danger that may result in serious physical harm."  *Washington v. Gibbons*, 2010 WL 2329918, at *1 (S.D.

10

Ga. May 18, 2010)(citations omitted); *see also Skillern v. Paul,* 202 F. App'x. 343, 344 (11th Cir. 2006)(stating that "[a] prisoner alleges imminent danger of serious physical injury, when he alleges that a total withdrawal of treatment for serious diseases, including human immunodeficiency virus ("HIV") and hepatitis, will cause him to suffer from severe ongoing complications, increased susceptibility to various illnesses, and a rapid deterioration of his condition")(citation omitted).[3] "General and conclusory allegations not grounded in specific facts will not suffice." *Washington*, at *1 (citation omitted).

"Although asthma certainly can qualify as a serious medical condition, *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995), the diagnosis of asthma alone is not enough to establish a serious medical need." *Crosby v. Perry,* 2010 WL 2464887, at *6 (M.D. Ga. June 14, 2010). To determine the seriousness of the conditions at the time of the complained of events, courts examine the complaint's allegations. *Id.* (holding that Plaintiff had an objectively serious medical need because his allegations

---

[3] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." *Lanier Constr. v. Carbone Properties of Mobile, LLC,* 253 F. App'x 861, 865 n.5 (11th Cir. 2007).

11

described "a classic physical symptom of an asthma attack")(*citing Board v. Farnham,* 394 F.3d 469, 484 (7th Cir. 2005)("[A]sthma can be, and frequently is, a serious medical condition, *depending on the severity of the attacks*" (emphasis added)); *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001)("Asthma, depending on its degree, can be a serious medical condition."); *see also Brown v. Sec'y PA. Dep't of Corrs.*, 486 F.App'x. 299, 301-02 (3d 2012)(holding that allegations of coughing up mucous that is speckled with blood, severe headaches, watery eyes, and changes in voice due to a faulty ventilation system and guards' tobacco smoke are sufficiently serious to pose a threat of imminent danger of serious physical injury).

Not every episode of asthma symptoms constitutes a serious medical need. . . . Courts recognize this distinction and refuse to fashion a rule that every instance of failure to treat a prisoner or detainee's asthma rises to the level of a constitutional claim. *Crosby,* 2010 WL 2464887, at *6, n.9 (citing *Adams,* 61 F.3d at 1539-41)(citation omitted).

Considering Plaintiff's allegation regarding his asthma under the liberal *pro se* pleading standard, he has failed to show that at the time of the filing of the complaint, he faced an imminent danger of serious physical

12

injury.  It appears that prior to Plaintiff's filing, he had an asthma attack and saw a doctor on account of it. (Doc. 1 at 10).  No information is offered about the treatment he received nor the state of his asthma after he was seen by the doctor.

Plaintiff only sets out that he received *treatment* for the collapse, and does not identify the cause of the asthma attack.  Furthermore, he does not specify *when* he actually collapsed, the severity of the attack, its duration, what harm he suffered as a result of the collapse or that he was susceptible to a subsequent attack before his release, which was, at most, three days later.

Regarding his many other complaints about overcrowding and uncleanliness at the Metro Jail, Plaintiff was moved to an isolation cell at the time he filed his Complaint, and thus, no longer directly subjected to those alleged conditions.  Therefore, they do not pose an imminent danger of serious physical injury at the time he filed his Complaint.

Moreover, the risk of an imminent danger of serious physical injury at the Metro Jail immediately ceased upon his release, which was shortly after filing this Complaint. *See Medberry,* 185 F.3d 1189, 1193 (finding that transfer to another prison facility negated Medberry's ability to

13

allege that he was under imminent danger of serious physical injury at his former prison); *Schuenke v. Wis. Dep't of Corrs.,* 2009 WL 3086089 (W.D. Wis. Sept. 18, 2009)(finding that the inmate's asthma claim did not satisfy § 1915(g)'s exception due to his transfer as "imminent danger exception is [only] available for genuine emergencies, where time is pressing and a threat . . . is real and proximate")(citation and quotation marks omitted).

Based on the foregoing reasons, the Court concludes that at the time of the Complaint's filing, Plaintiff was not under imminent danger of serious physical injury. Because Plaintiff cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $350 filing fee at the time he filed this action, Plaintiff's action is due to be dismissed without prejudice. *Dupree v. Palmer,* 284 F.3d 1234, 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to § 1915(g) does not "pay the filing fee at the time he *initiates* the suit")(emphasis in original); *Vanderberg v. Donaldson,* 259 F.3d 1321, 1324 (11th Cir.)(holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), *cert. denied*, 535 U.S. 976 (2002).  Therefore, it is recommended that

this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge=s recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  *Fed. R. Civ. P.* 72(b)(2).

>copy of the original brief may be submitted or
>referred to and incorporated into the brief in
>support of the objection.  Failure to submit a
>brief in support of the objection may be deemed
>an abandonment of the objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

   DONE this 24th day of April, 2013.

>                s/BERT W. MILLING, JR.
>                UNITED STATES MAGISTRATE JUDGE